Chief Justice Robertson

dissenting from the opinion of the majority of the court, delivered his own opinion.

The act of 1798,1 Dig. 590, declares that “it shall and may he lawful for any person applying to the county court to establish a ferry across any water course, he she or they so applying, owning the land on one or both sides of the said water course, (as the case may be,) if the court shall refuse to establish the same, according to law, the person so applying and thinking him or herself aggrieved, shall have, the right to appeal to the court of appeals, and may plead matters of fact as well as law, any law or usage to the contrary notwithstanding.”
When the former opinion was delivered in this case, the court was of opinion that the act of 1798, gave to either party the right to assignors of fact, and therefore, having, without objection, heard extraneous evi *545 dence, proving that the title to the land on the rivet, where the ferry was established, was in Kennedy and ' not in the trustees, reversed the order of the county court. On are-hearing, a majority of the court entertain the opinion, that the act of 1798, restricts, to the applicant, the right of assigning errors in fact, and therefore, as the record states, that the title was in the trustees, disregard the extrinsic testimony and affirm the order.
.My first opinion remains unchanged.
I acknowledge that a literal interpretation of the statute of 1798, will not allow Kennedy to go out of the record. ‘But I am satisfied that the spirit and end of the act oppose this construction. The rights of parties litigant, should be reciprocal. And no statute should be strictly construed, so as to give to one party, essential rights, which it withholds from his adversary.
Such invidious discrimination would be subversive of a fundamental principle of justice and of the common law, and would be flagrantly inconsistent with the spirit of our institutions.
If the applicant fail in the county court, he may assign errors in fact; may not the adversary party, if there be one, repel the extrinsic evidence, by the production of the like evidence ? This will hardly be doubted.
But suppose the applicant do not own the land, but, on an exparte application to the county court, shall prevail on the court to decide that he has title, and therefore, to grant him a ferry. The record exhibits no documents or other evidences of his title. The owner of the land, when informed of this infringement of his rights, applies to this court for redress. He is allowed to make himself a party, and to prosecute a writ of error, by proving uliunde, that the title to the land is in himself and not, as the county court said, in the grantee of the ferry. But when he shall have done all this, he is told that the order of the county court is immutable and intangible because it states that the grantee has title, and because the applicant for a ferry, has alone the right to question the record, by the production of extraneous proof! If this be true, then, although no person but the owner of the land, is entitled to a ferry *546 on the Ohio river, nevertheless, if any other person can obtain an order for a ferry and a recital, in the record, that he owns the land, there is no mode of procedure allowed to the owner, for reversing the erroneous order.
This I cannot admit. I am bound to believe that the legislature intended by the act of 1798, to give to the party “aggrieved” whether applicant or not, the right to assign “errors in fact as well as law.” There was no motive for granting so important a privilege to one party, and denying it to another; for liberating the one, and putting “hand cuffs” on the other.
The act speaks of applicants, “owning the land.” Shall a suggestion, by the county court, that an applicant is the owner, be conclusive evidence that he is, whilst a decision, by the county court, that he is not, may be reversed by proof, out of the record, that he is. For such inequality and incongruity, no reason can be imagined; and therefore, I cannot admit that the legislature intended to produce it.
In this case it is admitted, that the documents of title, 'exhibited in the record, are insufficient to sustain the order of the county court. But this court presumes that there Avas other and sufficient evidence. The record contains no evidence, of Kennedy’s title. And whilst the order is helped by presumption, Kennedy is not permitted to counteract the presumption by positive proof, although the trustees would have been permitted to combata decision of the. county court against them, by introducing extraneous evidence to show that the title was in them and not in Kennedy.
The phraseology of the act of 1798, is loose, ambiguous and ungrammatical. I Avould not, therefore, feel inclined to give, as literal a construction, as it might be entitled to, if it had been drawn with more care and precision. But if it had been ever so exact and explicit, I should be strongly inclined to construe it as applying equally to either party litigant, unless it had contained express negative words. It would be safer to infer in advertance in the use of words, than to impute to the legislature an intention to withhold from one party Avhat they accord to his adversary.
*547 All that is necessary to make the statute literally apply to both parties, is the substitution of the disjunctive “or” for the copulative “and;” or the interpolation of the words, the person, between the copulative and “think----ing;” and the insertion of the words by an order of the county court, after “aggrieved.” The act would then read; “the person so applying, or thinking himself aggrieved (by an order of court,) shall have the right, &c. or it would read; “the person so applying and {the person) thinking himself aggrieved (by an order of court) shall have the right,” <^c. thus meaning, that any person aggrieved may assign errors in fact. And such, (in my opinion,) should be the construction of the act. Because, I must believe that such was the intention of the-act of 1798.
1 do not consider it proper to discuss the subject in ex-tenso. I have intended only to exhibit the outline of the general view, which induces me to dissent from the opinion now rendered, and to adhere to that which it overturns.
I believe that the object of the legislature was to allow the assignment of errors in fact, in ferry cases, just as it had been allowed in cases of Mills’ wills and roads.. But that, as it would not often happen that any person, but an unsuccessful applicant, would desire to appeal, the act of 1798, omitted to refer expressly to a complaining . party who was not the applicant for the ferry; although the legislature intended that, in all such cases, the party aggrieved might “plead errors in fact.”
The intention of the legislature, when ascertainable by allowable means, is the act of the legislature, whatever may be the literal import of the language employed.
The-intention of the act of 1798, I have deduced from considerations, paramount, in my opinion, to the mere letter of confused and inappropriate phraseology; and although it is not easy to understand the precise effect of the opinion in the case of Wagner vs. The Trustees of tne Jefferson Seminary, I construe it as an authority in my construction of the act of 1798. But my opinion is not influenced by that case.
I also think that too much has been presumed in favor of the title of the trustees.